### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAYON BENSON,<br>*Plaintiff*,<br>v.<br>DELAWARE COUNTY, *et al.*,<br>*Defendants* | CIVIL ACTION<br>NO. 21-2854 |

**PAPPERT, J.**                                           **March 15, 2022**

<u>**MEMORANDUM**</u>

Dayon Benson alleges Defendants violated his constitutional rights when they failed to protect him from an attack by another inmate.  He also asserts state law negligence claims under theories of direct and vicarious liability.  Defendants Delaware County, The GEO Group, Inc., GEO Corrections, GEO Care, Warden Lee Tatum, Facility Administrator David Byrne and Cherrie Gillard[1] move to dismiss Benson's Amended Complaint.  The Court grants the motion as to Benson's federal claims and declines to exercise supplemental jurisdiction over his state law claims.

I

In July 2019, Benson, who was a pretrial detainee at the George W. Hill Correctional Facility, submitted a grievance form asking to be moved from Housing Unit 4A because "other inmates, including . . . Lamar Linehan, threatened to attack and 'cut' and 'jump' him . . . ."  (Am. Compl., ECF 8, ¶¶ 20, 22.)  Corrections Officers Yeboah and Gillard received his grievance.  (*Id.* ¶ 23.)  It was forwarded to Warden

---

[1]     To date, Corrections Officer Yeboah has not been served and none of the John/Jane Doe officers have been identified or served.

Tatum and Administrator Byrne. (*Id.* ¶ 24.) Benson was not immediately moved to "safer housing" and no measures were taken to protect him. (*Id.* ¶ 27.)

Two days later, Linehan, "a known violent inmate" also housed in Unit 4, stabbed Benson in the face with an improvised weapon. (*Id.* ¶ 28.) After the incident, Benson went to "the medical unit with a stab/puncture wound to his left cheek and a three inch cut [on] his left clavicle." (*Id.* ¶ 36.) He was moved to another housing unit after the incident. (*Id.* ¶ 37.) Benson alleges it was a "foreseeable consequence" of Defendants' failure to respond to his grievance and they were deliberately indifferent to his safety and failed to protect him by not moving him or taking other reasonable protective steps. (*Id.* ¶¶ 38-39.)

Benson claims Yeboah and Gillard had a "reasonable opportunity" to stop the attack but did not intervene. (*Id.* ¶¶ 29-32.) Yeboah was allegedly "close" to the attack because he was "locking in unit 4A" while Gillard witnessed it from a nearby control room where he was monitoring the unit on camera. (*Id.* ¶¶ 29-30.) Benson asserts no one intervened because Delaware County, GEO, Warden Tatum and/or Administrator Byrne had "policy, practice and/or custom" of "firing [ ] correctional officers who intervene with force to stop assaults by inmates." (*Id.* ¶ 33.) He also blames the failure to stop the attack on "a lack of training on the duty to intervene to protect an inmate from being assaulted" and contends their "deliberate indifference to a substantial risk of injury" to him led to his injuries. (*Id.* ¶¶ 34-35.)

## II

To satisfy Federal Rule of Civil Procedure 12(b)(6), Benson's Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, the Court should assume they are true and "then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  The "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

## III

Counts I through IV of Benson's Amended Complaint claim violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  As he was a pretrial detainee at the time of the alleged attack, the claims arise under the Fourteenth Amendment's Due Process Clause.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  It provides protections "at least as great as the Eighth Amendment protections available to a convicted prisoner . . . ." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d

Cir. 2003); *see also Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020)

("[T]he substantive due process guarantees afforded detainees . . . are at least as robust

as Eighth Amendment protections afforded prisoners[.]").

A

In Count I, Benson alleges each individual Defendant failed to protect him from

inmate violence.  Prison officials have a duty to "take reasonable measures to guarantee

the safety of . . . inmates" and are required "to protect prisoners from violence at the

hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (citation,

alteration and internal quotation omitted)).  To state a claim, Benson must set forth

enough facts to show: "(1) he was incarcerated under conditions posing a substantial

risk of serious harm, (2) the official was deliberately indifferent to that substantial

risk . . . , and (3) the official's deliberate indifference caused him harm." *Bistrian v.

Levi*, 696 F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds as recognized in

*Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020); *see also Thomas v. Cumberland

Cnty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("This Court has applied the same standard

to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth

Amendment.").

"[D]eliberate indifference describes a state of mind more blameworthy than

negligence." *Farmer*, 511 U.S. at 835.  It requires "obduracy and wantonness, not

inadvertence or error in good faith . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  It

is "subjective, not objective . . . meaning . . . it is not sufficient that the official should

have been aware" of the existence of the excessive risk. *Mammana v. Federal Bureau of

Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Woloszyn v. Cnty. of Lawrence*, 396

4

F.3d 314, 321 (3d Cir. 2005) (further citations omitted)).  To plead "deliberate indifference," Benson must allege facts showing a Defendant "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 846.  A defendant's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id.* at 838.

Benson's failure to protect claims against Yeboah and Gillard do not allege enough facts to "nudge" them "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  He claims they were aware he had asked to be moved because other inmates, including Linehan, threatened to attack him.  But according to the Amended Complaint, the only notice the Defendants had of any possible risk of harm to Benson was his single broad grievance.  Benson does not allege facts showing Yeboah or Gillard knew he was in "sufficiently substantial danger" before the alleged assault that are enough to give rise to a Fourteenth Amendment violation.  *Bistrian*, 696 F.3d at 367. He does not allege he made repeated pleas for transfer or that his grievance provided information about any particularized threat or the reason he believed he was at risk. There are no allegations to suggest any Defendant was aware of "longstanding, pervasive, well-documented, or previously noted tensions between" Benson and Linehan or any other inmate.  *Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014).  Without more, the risk that "an inmate with a history of violence might attack another inmate for an unknown reason" is too speculative to maintain Benson's failure to protect claims.  *Bistrian*, 696 F.3d at 371.  He has not alleged facts which could show

their "obduracy" or "wantonness."[2] *Whitley*, 475 U.S. at 319.

B

Benson's claims in Count II against Yeboah and Gillard for their alleged failure to intervene in the alleged assault are also insufficiently pled.  A corrections officer, "whether supervisory or not," may be liable under Section 1983 for failure to intervene in an unprovoked beating in his presence even though he does not personally use excessive force.  *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (citation omitted).  However, "an officer is only liable if there is a realistic and reasonable opportunity to intervene."  *Id.* at 651.

The Court takes as true that Yeboah and Gillard were in "close proximity" to the assault, but Benson alleges no facts to bolster his conclusory allegations that they had a "reasonable opportunity to intervene."  He does not describe the circumstances surrounding the assault with any particularity.  He does not explain where on the unit the assault took place, how many people were present at the time or who they were, how long the assault lasted, what events immediately preceded it or how the officers could have reasonably prevented further harm through their intervention.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  More details are required to allow the Court to draw the reasonable inference that any Defendant had a realistic and reasonable opportunity to intervene.

---

[2]     Benson's failure to protect claims against Warden Tatum and Administrator Byrne, neither of whom were alleged to have been present at the time of the alleged assault, fail for the same reasons as his supervisory liability claims against them in Count III, as the Court explains below.

C

In Count IV, Benson seeks to impose liability on Delaware County, the GEO Defendants[3], Tatum and Byrne[4] pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  He has not sufficiently alleged an underlying constitutional violation for any officer's failure to protect or failure to intervene.  *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("[I]f there is no violation in the first place, there can be no derivative municipal claim.").

Even if he did, municipal entities cannot be vicariously liable for employees' acts under Section 1983 under a *respondeat superior* theory of liability.  *See Monell*, 436 U.S. at 690.  And Benson has not alleged enough facts to establish either of the two ways in which a Section 1983 claim can proceed against a municipality.  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  A plaintiff may allege a constitutional violation caused by the municipal defendant's "official policies and customs."  *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020).  A plaintiff may also allege municipal liability through a "failure-or-inadequacy" claim.  *Forrest*, 930 F.3d at 106.

To proceed with custom or policy claims, Benson must "specify what exactly" the policy or custom was.  *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).  A

---

[3]     The theory of municipal liability applies to "private companies performing municipal functions."  *Smith v. Cmty. Educ. Ctrs., Inc.*, No. 18-5299, 2019 WL 2089997, at *2 (E.D. Pa. May 10, 2019); *see, e.g.*, *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 578 (3d Cir. 2003) (applying *Monell* to an action against "a private company that provides health care services to . . . inmates"); *Short v. Adams*, No. 17-4544, 2019 WL 331679, at *3 n.2 (E.D. Pa. Jan. 25, 2019) (concluding *GEO* was a state actor for purposes of § 1983)

[4]     Benson sues Tatum and Byrne in their individual and official capacities.  (Am. Compl. ¶ 15.) "A suit against a governmental official in . . . h[is] official capacity is treated as a suit against the governmental entity itself."  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004).

policy exists when a decisionmaker with "final authority . . . issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citation omitted). A custom is a practice "so permanent and well-settled as to virtually constitute law," and may be shown through the decisionmaker's "knowledge and acquiescence." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citation and internal quotations omitted). In addition, Benson must show any policy or custom was the "proximate cause" of his injuries. *Estate of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). To show causation, Benson may allege a municipal Defendant was aware of "similar unlawful conduct in the past," but "failed to take precautions against future violations, and . . . this failure, at least in part, led to the injuries in question." *Id.*

Benson alleges the municipal Defendants had a policy or custom of "permitting improvised weapons and the unlawful assault and battery of pretrial detainees by other known violent inmates . . . ." (Am. Compl. ¶12.) He alleges that as a part of their policy or custom, they "encouraged" Correctional Officers at George Hill "to ignore grievances regarding pending assaults" and fired Correctional Officers "who attempted to intervene to stop assaults by inmates." (*Id.* ¶ 68.) But beyond his descriptions of the alleged policies, Benson sets forth no additional facts to support his claim that such policies or customs existed. He does not point to any prior similar incidents involving improvised weapons or directives to ignore grievances about "pending" assaults that

would have put Defendants on notice of unlawful conduct.  Nor does he provide details about any officers' alleged termination from their intervention in an inmate assault. Further, Benson offers nothing more than generalized allegations that any Defendant was a decisionmaker with final authority.  See (Am. Compl. ¶ 15 (alleging Tatum and Byrne "had final decision-making authority regarding the care, safety, protection and supervision of inmates")).  Benson's policy or custom allegations are too conclusory to state a claim.

A claim predicated on failure or inadequacy is subject to the "separate, but equally demanding requirement of demonstrating" the alleged failure or inadequacy amounts to "deliberate indifference." *Forrest*, 930 F.3d at 106.  Benson can plead deliberate indifference by showing that:  (1) the municipal Defendants knew employees would confront a particular situation; (2) the situation involved a difficult choice or a history of employee mishandling; and (3) an employee's wrong choice would "frequently cause deprivation of constitutional rights." *Estate of Roman*, 914 F.3d at 798.  A "pattern of similar constitutional violations by untrained employees" is ordinarily necessary to show deliberate indifference. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014).  A single incident may be enough where it is "so obvious" the specific failure will result in a constitutional violation. *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Benson contends the municipal defendants "failed to have adequate staffing" to protect inmates from assaults and "failed to adequately test, hire, train, supervise, and discipline prison staff . . . regarding appropriate procedures for removing improvised weapons and ensuring the safety of inmates . . . ."  (Am. Compl. ¶¶ 69-70.)  He alleges

9

they failed "to have and/or enforce appropriate security classification/custody procedures, policies and training to:" (1) "prevent inmates with known violent propensities from being allowed to access improvised weapons;" and (2) "respond to grievances from inmates regarding imminent threats of harm from other known violent inmates . . . ." (*Id.* ¶ 76.) Benson does not, however, allege facts showing a pattern of prior incidents that suggest a need for additional staffing, training, testing, discipline or supervision. Nor is his description of the officers' involvement in the alleged incident sufficiently detailed to show the need for additional staffing, training, testing, discipline or supervision was "obvious." *Thomas*, 749 F.3d at 223. More specifics are required to proceed on a failure or inadequacy claim.

D

In Count III, Benson asserts separate similar claims under Section 1983 for "supervisory liability" against Tatum, Byrne, Yeboah and Gillard, alleging they "directed individuals under their supervision to take the . . . acts and failures to act that violated [his] constitutional rights." (Am. Compl. ¶ 56.) His conclusory allegation that these Defendants "directed" others' unconstitutional conduct is not enough to state a claim against them. To begin, supervisors can "only be liable if the people they supposedly directed to violate [a plaintiff's] rights actually did so," but Benson has not alleged enough facts to show an underlying constitutional violation. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

Even if he did, "vicarious liability is inapplicable," so Benson "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Personal involvement requires

10

particular 'allegations of personal direction or of actual knowledge and acquiescence.'"
*Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode v. Dellarciprete*, 845
F.2d 1195, 1207 (3d Cir. 1988)); *see also Barkes v. First. Corr. Med., Inc.*, 766 F.3d 307,
316 (3d Cir. 2014), rev'd on other grounds *Taylor v. Barkes*, 575 U.S. 822 (2015).
Generalized allegations that a defendant is "in charge of" or "responsible for"
individuals or conduct do not suffice to allege their personal involvement in a
constitutional violation. *See Santiago*, 629 F.3d at 129.  Benson has not shown any
individual defendant directly participated in or knew about and acquiesced in the
alleged assault.

Absent personal involvement, Benson must allege the supervisory defendants,
"with deliberate indifference to the consequences, established and maintained a policy,
custom, or practice which directly caused the constitutional harm." *Barkes*, 766 F.3d at
316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586
(3d Cir. 2004)).  It is not enough to allege they "should have known of the risk" that he
could be harmed by another inmate.  *Bistrian*, 696 F.3d at 367.  Benson, however,
makes only generalized allegations, not tied to specific facts, that the individual
Defendants were: (1) "deliberately indifferent" (Am. Compl. ¶¶ 60, 62); (2) adopted,
participated in or condoned policies, practices or customs which caused the alleged
constitutional harm (*id.* ¶¶ 58, 61, 63); and (3) "failed to adequately test, hire, train,
supervise and discipline prison staff." (*Id.* ¶ 59.)  Rule 12(b)(6) "demands more than an
unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions"
that are devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal
quotations omitted).

IV

Counts V and VI assert negligence claims against the GEO Defendants and Yeboah, Gillard and the John Doe Defendants.  As the plaintiff, Benson is required to plead the grounds for federal jurisdiction over his state law claims.  See Fed. R. Civ. P. 8(a)(1); *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 106 (3d Cir. 2015).

Although the caption of his Amended Complaint lists his Delaware address, a Florida address for the GEO Defendants and a Pennsylvania address for the other Defendants, Benson does not allege a basis for the Court's diversity jurisdiction.  He must establish complete diversity by alleging the citizenship of each party and must allege the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) ("[U]nless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant.") (citations, quotations and alteration omitted).  He has done neither.

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see also* 28 U.S.C. § 1367(c)(3).  In the absence of diversity jurisdiction, and with the dismissal of Benson's federal claims, the Court must decline to extend supplemental jurisdiction unless considerations of judicial economy, convenience and fairness require otherwise. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  They do not.

V

In civil rights cases, "courts must allow amendment, unless doing so would be inequitable or futile."  *McCall v. City of Phila.*, 396 F. Supp. 3d 549, 563-64 (E.D. Pa.

2019) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251

(3d Cir. 2007)); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave

when justice so requires.").  Benson has already amended his Complaint once as of right

in response to an initial Motion to Dismiss.  (ECF 6.)  If, consistent with this

Memorandum, Benson can allege enough facts to state a Section 1983 claim against

any Defendant or a basis for diversity jurisdiction over his state law claims, he may do

so in a Second Amended Complaint.

   An appropriate Order follows.

           BY THE COURT:


           ***/s/ Gerald J. Pappert***
           GERALD J. PAPPERT, J.